UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSUA S.,

                                    Plaintiff,

v.                                                          6:19-CV-1434
                                                            (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCE                                    OF COUNSEL:

OLINSKY LAW GROUP                            HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                  SEAN SANTEN, ESQ.
  Counsel for Defendant                      Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Josua[1] S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

---

[1]       Plaintiff's Complaint and most other Court filings spell his first name as "Josua." (Dkt.
No. 1, 7.)  "Josua" also appears throughout the administrative record.  (T. 7, 90, 93, 111.)
Plaintiff's brief spells his first name as "Joshua."  (Dkt. No. 9.)  Plaintiff has not filed a request
to amend his original pleading or otherwise advised the Court of any misnomer in his original
filing.  *See* Fed. R. Civ.  P. 15(a) (governing motions to amend pleadings by leave of court);
*United States* v. *Edwards*, 241 F.R.D. 146, 148 (E.D.N.Y. 2007) (summarizing court's authority
to correct caption errors *sua sponte*).  Accordingly, the Court will adopt the spelling in the

"Commissioner") denying his application for Supplemental Security Income ("SSI").  (Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Currently before the Court are Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) and Defendant's motion for judgment on the pleadings (Dkt. No. 12).  For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted and the Commissioner's decision is affirmed.

## I.      PROCEDURAL HISTORY

On November 23, 2015, Plaintiff filed an application for SSI, alleging that he became disabled on September 27, 2015, due to a severe ankle injury that required surgery. (Administrative Transcript ("T.") 151-160.)  His application was denied initially on May 11, 2016.  (T. 70-86.)  Plaintiff requested a hearing which was held on July 30, 2018, before Administrative Law Judge ("ALJ") David Neumann.  (T. 32-69.)  Plaintiff and Vocational Expert ("VE") Cherie Plante testified at the hearing.  (T. 36-68.)  The ALJ issued an unfavorable decision on October 19, 2018.  (T. 7-26.)  This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 23, 2019.  (T. 1-4.)

## II.     GENERALLY APPLICABLE LAW

### A.      Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

_____

Complaint.

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

3

cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Benefits[2]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority—42 U.S.C. § 405(a)—the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

---

[2]    The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   <u>FACTS</u>

As of the date of the first administrative hearing in July 2018, Plaintiff was 36 years old. (T. 36.)  Plaintiff left school after the ninth grade.  (T. 37, 280.)  His prior employment included general construction, siding installation, mechanical repair of agricultural equipment, and assembly work at a manufacturing facility.  (T. 52-58.)  He resided with his girlfriend and his father, who both assisted him with cooking and other household chores.  (T. 39-40.)

Plaintiff had not worked since September 2015, when he shattered his left ankle in a fall from a ladder.  (T. 237.)  The injury required fusion surgery and the installation of at least ten screws.  (T. 364-365.)  After recovering from surgery, Plaintiff used a cane and wore an ankle-foot orthotic ("AFO") brace on his left foot on a daily basis.  (T. 43, 49-50, 474.)   Plaintiff testified that he had difficulty walking or standing for more than five minutes at a time, and could not comfortably sit in one position, due to his ankle impairment in combination with long-term back and neck pain.  (T. 38-39.)

The record includes Plaintiff's treatment history.  Rather than summarizing these records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.   THE ALJ'S DECISION

After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after his application date of November 23, 2015, the ALJ found that Plaintiff had the following severe impairments: mild degenerative changes of the lumbar spine; degenerative changes of the left ankle; mild degenerative changes of the cervical spine; mild curvature of the thoracic spine; and asthma.  (T. 12-14.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment.  (T. 14-15.) At step four, the ALJ found that Plaintiff could perform less than the full range of light work.  (T. 15-24.)  Specifically, he found that Plaintiff can lift and carry ten pounds frequently and twenty pounds occasionally; can stand and walk for one hour and sit for seven hours with normal breaks during an eight hour workday; can push and pull with his upper and lower extremities within the previously described weight restrictions; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated pollutants and temperature extremes. (T. 15-16.)  The ALJ also found that Plaintiff required a cane while walking, but he can still use the opposite hand for lifting or carrying. (T. 16.)

In making the residual functional capacity ("RFC") determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that he considered opinion evidence in accordance with 20 C.F.R. § 416.927.  (*Id*.)  The ALJ also found that Plaintiff's statements regarding the intensity,

6

persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 17.)

At step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work.  (T. 24.)  However, based upon the RFC and the testimony of VE Plante, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (T. 25.)  Accordingly, the ALJ found that Plaintiff was not disabled at any time from his application date to the date of the ALJ's decision.  (T. 26.)

**V.      ISSUES IN CONTENTION**

Plaintiff argues that the ALJ improperly weighed the medical opinion evidence, resulting in an RFC determination that was not supported by substantial evidence.  (Dkt. No. 9 at 9-14.) The Commissioner contends that the ALJ's analysis of the medical evidence and his ultimate RFC determination were supported by substantial evidence.  (Dkt. No. 12 at 14-20.)  For the following reasons, this Court agrees with Defendant and affirms the Commissioner's decision.

**VI.     RFC AND MEDICAL OPINION EVIDENCE**

  **A.      Legal Standards**

    **1.      RFC**

RFC is "what [the] individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *accord Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Babcock v. Berryhill,* 17-CV-00580, 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12,

2018) (Sannes, J.); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant."); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing, conclusory statements regarding plaintiff's capacities are not sufficient.").  An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *accord Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (Sharpe, J.)*; Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183).  The RFC assessment must also include a narrative discussion, describing how the

evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, 17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

In making a disability determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment, the plaintiff's RFC, how the vocational factors apply, and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, 10-CV-4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

In terms of weighing opinion evidence, the Second Circuit has long recognized the treating physician rule set out in 20 C.F.R. § 404.1527(c).[3] "Thus, the opinion of a claimant's

---

[3]     For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). But since Plaintiff filed his claim on November 23, 2015, the treating physician rule applies. *See Claudio v. Berryhill*, 17-CV-1228, 2018 WL 3455409, at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), *report and recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources" under the regulations, the ALJ must

consider the same factors as used for evaluating opinions from medically acceptable sources.

*Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.) (citing *Canales v.*

*Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL

2329939.

### 3.      Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the

plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49

(2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants

regarding their symptoms, which fall into seven relevant factors including 'daily activities' and

the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen*

*Fernandez v. Berryhill*, 18-CV-0326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing

20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation

of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16,

2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-

regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 81 FR at

14167.  Instead, symptom evaluation tracks the language of the regulations.  The evaluation of

symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective

medical evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's]

alleged functional limitations and restrictions due to pain or other symptoms can reasonably be

accepted as consistent with the [objective medical evidence] and other evidence to decide how

11

[the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.*; *see also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

12

B.      **Application**

Plaintiff contends that the ALJ erred in evaluating the medical opinion evidence relating to his physical functional limitations.[4]  (Dkt. No. 9, at 9-14.)  More specifically, Plaintiff argues that the ALJ assigned excessive weight to the opinion of May 3, 2016, of consultative examiner Dr. Brian Cole and assigned too little weight to the opinion of April 7, 2018, of treating nurse practitioner ("NP") Irene Willett.  (*Id*.)

### 1.  **Opinion of Dr. Brian Cole**

Dr. Cole performed a consultative examination of Plaintiff on May 3, 2016.  (T. 276-279.)  He described Plaintiff as appearing in no acute distress, but demonstrating a limp on the left side and an inability to walk on his heels and toes.  (T. 277.)  Plaintiff was able to perform a full squat during the examination despite experiencing knee and lower back pain during the exercise.  (*Id*.)  Plaintiff wore his AFO brace on his left foot during the examination and exhibited a right leaning stance.  (*Id*.)  He required no assistance changing for the examination, getting on and off the examination table, or rising from a chair.  (*Id*.)

Dr. Cole found that Plaintiff's cervical and lumbar spine had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  (T. 278.)  Plaintiff also had full range of motion in his shoulders, elbows, forearms, and wrists bilaterally, along with full range of motion in his lower extremities including the hips, knees, and ankles.  (*Id*.)  Plaintiff showed full grip strength in hands, along with intact hand and finger dexterity.  (*Id*.)

---

[4]      The ALJ also assigned "some weight" to the opinion of May 3, 2016, of consultative psychiatric opinion of Dr. Jacqueline Santoro, and "significant weight" to the opinion of May 11, 2016, of non-examining state psychological consultant Dr. M. Bowman.  (T. 23.)  Plaintiff has not challenged the ALJ's evaluation of these opinions or the RFC determination as it relates to Plaintiff's mental functional limitations.

Based on his examination, Dr. Cole opined that Plaintiff had "moderate" restrictions for standing and walking, squatting and walking, and lifting and carrying.  (T. 279.)  He further opined that Plaintiff should avoid smoke, dust, and other known respiratory irritants in light of his history of asthma.  (*Id.*)

The ALJ cited a number of reasons for assigning "significant weight" to Dr. Cole's opinion.  (T. 22-23.)  First, he cited Dr. Cole's knowledge and expertise in relation to disability programs, rules, and regulations. (T. 22.)  Next, he found that Dr. Cole's opinion was "consistent" with his consultative examination findings, and "generally consistent" with substantial evidence of record including Plaintiff's course of treatment and the diagnostic tests of record.  (T. 22-23.)

Plaintiff contends that the ALJ erred in assigning significant weight to a consultative examiner's opinion, because it was based on a single examination and described "moderate" limitations that were too vague to reliably depict Plaintiff's functional limitations.  (Dkt. No. 9 at 11-12.)  The Court has considered these arguments and found them to be unpersuasive.

"It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Flake v. Comm'r of Soc. Sec.*, 15-CV-1128, 2016 WL 7017355, at *8 (N.D.N.Y. Nov. 10, 2016) (Carter, M.J.) (citing 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e)), *report and recommendation adopted by*, 2016 WL 7017396 (N.D.N.Y. Dec. 1, 2016) (Suddaby, C.J.).  The report of a consultative examiner may thus serve as substantial evidence upon which the ALJ may base his decision.  *Herb v. Colvin*, 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, 13-CV-0543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014)); *Simmons v. Comm'r*

*of Soc. Sec.*, 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039).

Further, a consultative examiner's use of the term "moderate" does not automatically render his opinion too vague to be reliable.  *Jeffrey A. v. Comm'r of Soc. Sec.*, 18-CV-1473, 2020 WL 1234867, at *7-8 (N.D.N.Y. March 13, 2020) (Hummel, M.J.) (collecting cases); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) (Sharpe, C.J.) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than per se.  Reviewing courts must weigh the impact of vague opinion in its unique factual circumstance.").

Although a consultative examiner's "use of the terms 'moderate' and 'mild,' *without additional information*," is insufficient for an ALJ to assess Plaintiff's exertional limitations, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (superseded by regulation on other grounds by 20 C.F.R. § 404.1560(c)(2)) (emphasis added), courts have held that a consultative examiner's conclusion was not impermissibly vague where the conclusion was "well supported by his extensive examination."  *Waldau v. Astrue*, 11-CV-0925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2012) (Sharpe, C.J.) (consultative examiner's findings of "moderate" physical limitations was well supported by consultative examiner's findings regarding plaintiff's gait, range of motion in the upper and lower extremities, grip strength and finger dexterity). Likewise, medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record.  *Antoine T. v. Comm'r of Soc. Sec.*, 18-CV-0232, 2019 WL 2327937, at *10 (Hummel, M.J.) (N.D.N.Y. May 31, 2019) (vague limitations in consultative opinion were made "more concrete" by the ALJ's analysis of the remaining opinion and other evidence).

In this case, Dr. Cole provided sufficient information for the ALJ to understand his use of the term "moderate."  During his examination of Plaintiff, Dr. Cole found full range of motion in the spine, upper extremities and lower extremities, as well as full grip strength and hand dexterity.  (T. 278.)  His examination report also included a description of Plaintiff's gait, stance, squat, and ability to rise from a chair and the examination table.  (T. 277.)  As discussed above, such findings have been found to sufficiently clarify a finding of "moderate limitations." *Waldau*, 2012 WL 6681262, at *4.

In addition to Dr. Cole's own examination findings, the ALJ analyzed other record evidence before assigning significant weight to the consultative opinion.  Following his ankle surgery, follow-up examinations consistently showed that Plaintiff's ankle was well-healed, despite suffering an ankle sprain in February 2018.  (T. 312.)  Even following this re-injury, imaging reports showed no loosening of the ankle screws or any new fractures.  (T. 321.)  The ankle had properly fused after surgery, and his physicians deemed it weight-bearing.  (T. 444.)  In May 2018, the physician who performed the original surgery described Plaintiff as "doing well."  (T. 514.)  During that May 2018 examination, Plaintiff was able to wiggle his toes, and demonstrated full sensation in his left foot.  (T. 518.)

In assessing Plaintiff's back and shoulder pain, the ALJ reviewed multiple imaging reports and the associated physician notes. (T. 21-22.)  In September 2016, Dr. Christopher Brennan reviewed x-rays of Plaintiff's cervical spine and found "no acute osseous abnormality" and "mild degenerative change at the C5-C6 level."  (T. 288.)  In November 2016, Dr. Jed Weinstock observed "generally mild multilevel degenerative changes" after an MRI of Plaintiff's cervical spine.  (T. 284.)  In February 2017, Dr. Gaylel Abramson reviewed an MRI of Plaintiff's thoracic spine and found it to be "essentially unremarkable."  (T. 325.)  Dr. Brian White

16

reviewed an x-ray of Plaintiff's cervical spine from September 2017, and found "some degree of cervical degenerative changes" but observed "no gross deformity" during the physical examination.  (T. 477-478.)  Dr. White also reviewed an x-ray of Plaintiff's shoulders from November 2017, and described it as a "fairly benign study with no significant pathology noted." (T. 477.)   The ALJ's discussion of Plaintiff's imaging reports mirrors the summaries from these physician notes, despite Plaintiff's contention that he substituted his lay evaluation of the raw medical data.  (Dkt. No. 9 at 12.)  Therefore, the ALJ's conclusions are supported by substantial evidence.

### 2.   Opinion of NP Willett

NP Willett completed a Medical Source Statement on April 7, 2018.  (T. 326-329.)  She noted that she treated Plaintiff's ankle pain and chronic neuropathic pain for four to five months. (T. 326.)  She opined that Plaintiff's physical impairments allowed him to sit for only twenty minutes at one time and for a total of about two hours during an eight hour workday, and stand for five minutes at one time and for a total of less than two hours during an eight hour work day. (T. 326-327.)  She further opined that Plaintiff would require a job that allowed him to shift positions at will from sitting, standing, or walking.  (T. 327.)  NP Willett reported that Plaintiff's pain medication resulted in side effects including chronic fatigue, dizziness, "movement, control, or sensation disturbance," and "vision, speech, or hearing disturbance."  (T. 326.)  She also confirmed that Plaintiff required a cane to relieve pain and increase his stability.  (T. 327.)

With regard to other exertional limitations, NP Willett opined that Plaintiff could never perform any lifting or carrying in a competitive work situation.  (*Id*.)  She also opined that Plaintiff could only occasionally look down, turn his head right or left, look up, and hold his head in a static position.  (*Id*.)  In her opinion, Plaintiff could frequently perform fine

manipulation activities with his fingers but was limited to occasional reaching of his arms

(including overhead reaching), and occasional grasping, twisting, and turning of his hands.  (*Id*.)

NP Willett also opined that Plaintiff would require an unscheduled ten minute break every half

hour, and would be off task for more than twenty percent of an eight hour work day.  (T. 328.)

She estimated that Plaintiff would likely be absent from work more than four days per month as

a result of his impairments or treatment.  (*Id*.)  She also opined that Plaintiff needed to be in a

warm, quiet environment.  (*Id*.)  In her opinion, these limitations had existed and persisted to the

same degree since at least September 27, 2015.  (T. 329.)

The ALJ assigned "little weight" to NP Willett's opinion.  (T. 24.)  He found that her

opinion was inconsistent with Plaintiff's course of treatment, the diagnostic tests of record, and

Dr. Cole's opinion.  (*Id*.)  Indeed, the functional limitations described by NP Willett are not

supported by the treatment notes or imaging reports in the record (as described above in the

analysis of Dr. Cole's opinion), that depicted a generally successful ankle surgery and repeated

physician recommendations that Plaintiff pursue physical therapy to treat his back pain, neck

pain, and the residual pain in his left ankle.  (T. 312, 444, 518.)

The Court also notes that some of NP Willett's restrictive opinion were contradicted by

Plaintiff's testimony.  Although NP Willett opined that Plaintiff could not lift any weight,

Plaintiff testified that he could lift, carry, push and pull "probably about 20 pounds max" despite

his impairments.  (T. 39, 327.)  NP Willett provided minimal narrative that would support her

opinion or explain the inconsistencies with the longitudinal medical record.  In particular, NP

Willett, whose treatment relationship with Plaintiff only dated back to November 2017, failed to

explain the basis for her opinion that Plaintiff's functional limitations were essentially unchanged

since September 2015.  *See, e.g., Michael B. v. Saul*, 19-CV-0507, 2020 WL 5709179, at *10

18

(N.D.N.Y. Sept. 24, 2020) (Stewart, M.J.) (citing *Z.J.F. by Conkling v. Comm'r of Soc. Sec.,* 16-CV-1397, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.)) ("[C]ourts have routinely recognized the failure to provide a requested narrative explanation on a check box form as a legitimate reason for affording a treating source opinion limited weight."). Accordingly, the ALJ provided substantial evidence to support the weight assigned to NP Willett's opinion.

### 3.   Medical Source Statement of Dr. Briana Calore

The record also contains an incomplete Medical Source Statement from Dr. Briana Calore, who performed Plaintiff's ankle surgery in October 2015, and provided follow-up treatment. (T. 252-269, 330-333, 364-371.) On the undated form, Dr. Calore confirmed that she had seen Plaintiff multiple times each year since his 2015 surgery. (T. 330.) However, she declined to complete the assessment of Plaintiff's functional limitations because she had not performed a functional capacity examination. (T. 330-333.) The ALJ assigned this statement "no weight" due to its low probative value. (T. 24.)

### 4.   Substantial Evidence Supports the ALJ'S RFC Determination

The ALJ is responsible for reviewing all the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) (Sharpe, C.J.) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Thus, in formulating Plaintiff's RFC, the ALJ was not required to accept every limitation in the various medical opinions nor craft an RFC mirroring a particular opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with

19

any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

Likewise, an ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony.")).  However, an ALJ cannot "'pick and choose' evidence in the record that supports his conclusions."  *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).  Similarly, the ALJ's determination should not be premised on an inaccurate or incomplete review of the record.  *See Marobella v. Colvin*, 15-CV-0843, 2016 WL 8672960, at *10 (N.D.N.Y. July 15, 2016) (Dancks, M.J.) (remanding where ALJ relied on an erroneous interpretation of Plaintiff's medical records); *see also Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (remanding where "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored" by ALJ).

Here, the ALJ considered the medical opinion evidence, extensive treatment notes, Plaintiff's testimony and other evidence in the record to assess Plaintiff's physical RFC.  (T. 20-21.)  Thus, the ALJ's determination that Plaintiff was capable of performing less than the full range of light work was supported by substantial evidence.

**VII.    STEP FIVE DETERMINATION**

Plaintiff has not raised any specific challenge to the ALJ's step five determination, so this court will only briefly address this issue.  At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional

limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper. *Calabrese*, 358 F. App'x at 276-77.

VE Plante testified at the hearing. (T. 59-68.) Because this Court has found the ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Plante based upon that RFC was proper, and his step five determination was supported by substantial evidence. Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA. 20 C.F.R. § 416.920(g).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.


Dated: January \_\_11\_, 2021
          Binghamton, New York

_Miroslav Lovric_
Miroslav Lovric
U.S. Magistrate Judge

22